IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No. 3:25-cr-18–HEH |
| ) | |
| JAVION STAMPER, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION
(Sustaining both the Defendant's Objection and the Government's Objection to the Revised Presentence Report)

THIS MATTER is before the Court on the Defendant Javion Stamper's ("Defendant") Objection ("Def's Obj.," ECF No. 29) to the high-capacity magazine sentencing enhancement under U.S.S.G. § 2K2.1(b)(6) and the Government's Objection ("Position on Sentencing," ECF No. 28) requesting a stolen firearm sentencing enhancement under U.S.S.G. § 2K2.1(b)(4). The Defendant opposes both enhancements. (ECF No. 30.) Following numerous edits to the Presentence Investigation Report applying both sentencing enhancements, the Government ultimately requested a sentence of 33 to 41 months. (Position on Sentencing.)

The parties filed extensive memoranda supporting their respective positions. The Court held a sentencing hearing on August 19, 2025. The Court sustained both the objection to the high-capacity magazine enhancement and the objection as to the non-application a stolen firearm enhancement, resulting in a Guidelines sentencing range of 15 to 21 months of incarceration. (Min. Entry at 2, ECF No. 33.)

## I. BACKGROUND

On February 18, 2025, a grand jury sitting in the Eastern District of Virginia returned a one-count Indictment charging the Defendant with Possession of a Firearm and Ammunition by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 3.) The Defendant was arrested on March 5, 2025, and remained in continuous federal custody since that date. (ECF No. 7.) He was previously held on related state charges from September 19 to September 25, 2024. ("Initial PSR," ECF No. 23 ¶ 6.)

On April 25, 2025, the Defendant appeared before this Court and entered a plea of guilty to Count One of the Indictment. ("Statement of Facts," ECF No. 17.) In connection with the plea, the Defendant and the Government jointly submitted an agreed Statement of Facts, which the Court accepted and incorporated into the record. That Statement of Facts included the stipulation that the recovered firearm "was loaded with a 15 round magazine and had a round in the chamber." (Statement of Facts at 2.)

At the April 25 plea hearing, both parties agreed that no plea agreement existed. ("Plea Hearing Transcript," Plea Hr. Tr. at 2, ¶¶ 19–22; ECF, No. 24.) During the plea colloquy, the Court confirmed twice with the Defendant that there was no agreement and that he did not expect anything from the Government in exchange for his guilty plea. (*Id.* at 5 ¶¶ 1–7; 12–21.) And yet, the Statement of Facts stipulated to by the parties on the same day expressly states: "[t]his statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States." (Statement of Facts ¶ 12). Likewise, in the same document the Defendant states plainly: "pursuant to the plea agreement entered into this day between the defendant, and the

2

United States, I hereby stipulate that the above Statement of Facts is true and accurate." (*Id.* at 4.)

On July 15, 2025, the Government received the initial Presentence Investigation Report (PSR) from the probation officer. (Initial PSR.) This Initial PSR adopted the 15-round stipulation from the April 25 Statement of Facts and, under U.S.S.G. § 2K2.1(a)(6), calculated a base offense level of 14—the provision that applies when a prohibited person possesses a firearm without a "large capacity magazine" or certain other aggravating circumstances. (*Id.* ¶ 15.) The Government admitted in its Response to the Defendant's Objection that it had mistakenly written in the Statement of Facts that the "magazine was a 15 round magazine" and that the firearm possessed by the Defendant was instead "loaded with a 17 round magazine." ("Govt's Resp." ECF No. 31 at 2.) The Probation Officer revised the Initial PSR on August 1, 2025, to treat the firearm as having a "large capacity magazine" and applied U.S.S.G. § 2K2.1(a)(4)(B), which sets a base offense level of 20 for such firearms. ("Revised PSR," ECF No. 25 ¶ 15.)

In its position on sentencing, the Government also objected to the Initial PSR's failure to apply an enhancement for the firearm's having been stolen. U.S.S.G. § 2K2.1(b)(4). (Position on Sentencing at 1.) At the sentencing hearing, ATF Special Agent Cavanaugh testified that the firearm the Defendant possessed had been stolen from a Government witness. Agent Cavanaugh, upon cross-examination, nonetheless indicated that the witness was uncertain of the exact date of the theft, placing the date as taking place in either late 2023 or March 2025 during different interviews

3

with police. The Reports of Investigation entered into evidence by the Defendant corroborate these inconsistencies.

## II. LEGAL STANDARD

### A. Plea Agreements

Plea agreements are grounded in contract law. *United States v. Petties*, 42 F.4th 388, 393 (4th Cir. 2022). For there to be a binding contract there must be a bargain in which there is a manifestation of mutual assent to the exchange and consideration. *See* Restatement (Second) of Contracts § 17 (1981). In determining what, if any, promises the government made, a court looks to the plain language of the agreement. *United States v. Under Seal*, 902 F.3d 412, 417 (4th Cir. 2018) (quoting *United States v. Warner*, 820 F.3d 678, 683 (4th Cir. 2016)). The Fourth Circuit has repeatedly interpreted plea agreements by relying heavily on the plain text of the specific agreement at issue. *United States v. Craig*, 142 F.4th 192, 197 (4th Cir. 2025); *United States v. Anderson*, 774 F. App'x 794, 796 (4th Cir. 2019).

Nonetheless, plea agreements receive "greater scrutiny" than that applied to ordinary commercial contracts given the stakes: a defendant's waiver of his constitutional right to trial, induced by the government's commitments in the plea agreement. *Petties*, 42 F.4th at 393. The interpretation of plea agreements "require[s] holding the Government to a greater degree of responsibility than the defendant" for any "imprecisions or ambiguities" in those agreements. *Id.* Indeed, "ambiguities in plea agreements are construed against its drafter—the Government." *United States v. Johnson*, 420 F. Supp. 3d 462, 467 (E.D. Va. 2019), *aff'd*, 13 F.4th 348 (4th Cir. 2021).

Furthermore, "[n]either side should be able, any more than would be private contracting parties, unilaterally to renege or seek modification simply because of uninduced *mistake* or change of mind." *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986) (emphasis added). Indeed, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Likewise, the government has a "duty to furnish complete and accurate information at sentencing," albeit one which must be balanced with its "duty to honor its commitments under a plea agreement." *United States v. Edgell*, 914 F.3d 281, 288 (4th Cir. 2019).

### B. U.S.S.G. § 2K2.1(b)(4): Stolen Firearm Enhancement

The U.S. Sentencing Guidelines do not require that a stolen firearm be reported as stolen in order for its possession to result in a sentence enhancement. U.S.S.G. § 2K2.1(b)(4). The government must demonstrate by a preponderance of the evidence that a defendant intended to deprive the owner of the rights and benefits of owning the gun. This condition is met when a defendant takes "the firearm knowing he was not its rightful owner and [makes] no attempt to return it." *United States v. Lavalais*, 960 F.3d 180, 188 (5th Cir. 2020). The Fourth Circuit has consistently held that § 2K2.1(b)(4) has no *mens rea* requirement. *United States v. Taylor*, 659 F.3d 339, 343 (4th Cir. 2011). No circuit has found the lack of a *mens rea* requirement under this statute unconstitutional. *Id.* at 344 (collecting cases). The stolen firearm enhancement is based on the widely accepted principle that "[stolen] firearms in the hands of people recognized as

5

irresponsible pose great dangers." *United States v. Mobley*, 956 F.2d 450, 454 (3d Cir. 1992). Those who are prohibited from possessing firearms under § 922(g)(1) can easily avoid the enhancements of § 2K2.1(b)(4): they can do so by "simply obey[ing] the law. When [a defendant] decide[s] not to do so, he assume[s] the attendant risks of criminal conduct, including the possibility that his newly acquired firearm might be stolen." *Taylor*, 659 F.3d at 343.

## III. ANALYSIS

### A. The Existence of a Plea Agreement

The Government argues that Fourth Circuit case law supports the proposition that any waiver of prosecutorial discretion regarding the Government's position at sentencing must be explicitly stated in any agreement between the Government and the Defendant. (Govt's Resp. at 5.) The Defendant on the other hand argues that the Government's 15-round magazine stipulation induced his guilty plea, amounting to a binding agreement between the parties. (Def's Obj., at 5.)

The relevant Fourth Circuit case law does not support the Government's objection. The Government correctly notes that at the April 25, 2025 plea hearing, both the Government and the Defendant stated on the record that no plea agreement existed in this case. (Plea Hearing Transcript ¶¶ 19–22.) However, the Statement of Facts jointly signed and submitted by the parties to the Court on the same day expressly declared that it "includes those facts necessary to support the plea agreement between the defendant and the United States," with the Defendant stipulating to the accuracy of the facts therein "pursuant to the plea agreement entered into on this day between the defendant [] and the

6

United States." (Statement of Facts ¶ 12.) This is a plain contradiction on the record. As such, the Government's contention that there was no plea agreement is contradicted by the plain language contained in the Statement of Facts.

The language in the parties' Statement of Facts alone may well be sufficient to prove the existence of a partial plea agreement. *See Craig*, 142 F.4th at 197. "[W]e enforce a plea agreement's plain language in the ordinary sense." *Under Seal*, 902 F.3d at 417. Likewise, as the Fourth Circuit has held and this Court has previously written, "ambiguities in plea agreements are construed against its drafter—the Government." *Johnson*, 420 F. Supp. 3d at 467; *see also Craig*, 142 F.4th 192, 197; *and see Anderson*, 774 F. App'x at 796. Put simply, when in doubt, courts must look to what the parties actually wrote. As such, even where a court has some indications that one or both parties did not intend to be bound by a written agreement or a term therein, it must seek to give effect to any written agreements whose terms are "unambiguous." *Harvey*, 791 F.2d at 300.

Here, the Defendant signed a statement indicating that "pursuant to the plea agreement entered into this day between the Defendant, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate." (Statement of Facts at 4.) The plain language and structure of this phrasing implicates an agreement. Thus, while it may well be the case that the Government used a document template which contradicted their actual intention not to enter into an agreement, the Court cannot simply disregard the plain and express language in the Statement of Facts affirmatively indicating the presence of such an agreement. *Craig*, 142 F.4th at 197. The result of this

7

agreement is that, in exchange for the Defendant's guilty plea and factual stipulation, the Government is bound by its stipulation to the set of facts which includes the 15-magazine capacity error.

### B. The Stipulation Alone is Binding as to the Magazine Capacity

The Government would still not prevail on this issue in the absence of a formal plea agreement. The Fourth Circuit's admonition to strictly adhere to the language of any agreement between the government and a criminal defendant is instructive. *Harvey*, 791 F.2d at 300; *Johnson*, 420 F. Supp. 3d at 467. Even aside from the contradictions between the contents of the Statement of Facts and representations made during the plea colloquy, the Statement of Facts contains an agreement by the Government as to the magazine capacity of 15-rounds. (Statement of Facts ¶ 8.)

The Government relies upon *United States v. Anderson* for the proposition that an agreement to stipulate to facts does not prevent it from later relying on additional facts to request a sentence enhancement. 774 Fed. Appx. at 796. Nonetheless, the plea agreement in *Anderson* "reserved the Government's right to inform the Probation Officer of all relevant conduct and/or correct any inaccuracies or inadequacies in the report." (*Id.* at 3 (citing *Anderson*, 774 Fed. Appx. at 795)). No such stated reservation exists in the Statement of Facts at issue in this case. Instead, the present Statement of Facts merely contains language indicating that it "does not contain each and every fact known to the defendant and to the United States and is not intended to be a full enumeration of all of the facts surrounding the defendant's case." (Statement of Facts at 3.) This provision

does not permit the Government to correct a mistake which by its own admission it possessed the knowledge and ability to prevent. (Govt's Resp. at 2.)

Where an agreement is "unambiguous as a matter of law ... the agreement should be interpreted and enforced accordingly." *Harvey*, 791 F.2d 294, 300 (4th Cir. 1986). While this case presents some controversy between the parties as to whether a formal plea agreement existed, they nonetheless unambiguously agreed to the 15-round magazine capacity stipulation. "[A]mbiguities in plea agreements are construed against its drafter—the Government." *Johnson*, 420 F. Supp. 3d at 467. The Government must honor its past agreement as to the facts at hand. Regardless of the existence of a formal plea agreement, it is bound to the 15-magazine stipulation and thus precluded from seeking an enhanced sentence on the basis of a factual finding of a higher magazine capacity.

### C. U.S.S.G. § 2K2.1(b)(4): Stolen Firearm Enhancement

At sentencing, ATF Special Agent Cavanaugh testified to conducting several interviews with the firearm owner, who provided contradictory statements as to when the firearm was stolen from a vehicle parked in his front yard. One date reported by the witness stating that the firearm was stolen in March 2025 is not logically possible, since the Defendant had the firearm in his possession during his September 2024 arrest. (Statement of Facts ¶ 1.) The other reported date of theft, late 2023, is nonetheless logically possible. Neither party presented any evidence to the Court as to how the Defendant acquired the weapon reported as stolen. The Defendant argued at sentencing

9

that the inconsistencies in the witness' testimony discount the veracity of the Government's evidence.

The former owner's confusion does not alter the fact that the Defendant illegally possessed a weapon that he had no right to possess. 18 U.S.C. § 922(g)(1). (ECF No. 30.) Nor is there any requirement that the weapon be reported as stolen to apply an enhanced sentence under § 2K2.1(b)(4). *Taylor*, 659 F.3d at 343. Given the widely accepted fact that § 2K2.1(b)(4) has no *mens rea* requirement, the mere possession of the stolen weapon is sufficient to support the enhancement. *Id.* at 344. The Court finds that § 2K2.1(b)(4) is properly applied in this instance.

## IV. CONCLUSION

For all the foregoing reasons, the Defendant's Objection (ECF No. 29) will be sustained, and the Government's Objection (ECF No. 28) will be sustained.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: August 28, 2025
Richmond, Virginia